LYONS, Judge.
I understood the decision in Hyers v. Oreen, to have proceeded on the ground, that the plaintiff had not shewn any title in himself.
Wickham. Then we are still at liberty to argue the point of non tenure. If the counsel on the other side are right in their construction of the act of 1786, then judgment iinal is to be entered against the demandant in favor of the tenant, who will thus become entitled to the lands of the demandant, although he had no right to them; for, the demandant will be forever barred to claim them in any other action: Which must certainly be contrary to the intention of the Legislature. The word demurrer, in the act of 1786, shews, that the tenant is not obliged to join the mise upon the mere right, and, consequently, that the word may is not imperative, as those on the other side suppose. Nor do the cases, cited from 6 Bac., prove it; for, they relate to the acts of public officers. The argument, drawn from the doctrine of views, is plausible, at first sight, but it is founded on a mistake of the subject; for, that related to the title papers. Nor does the case of Beverley v. Fogg, apply; because, it is necessary that the count should describe the bounds; so that the Sheriff may know what lands to deliver; and that the land-marks should be perpetuated. The act of 1786 only relates to pleas in bar; like pleading the general issue, with leave to give the special matter in evidence.
The demurrer is no waiver of the bill of exceptions. For, the exception is to the admissibility; but, the demurrer denies its force, when admitted.
Randolph, in reply, Á 1
If the tenants are entitled to the lands they hold, they ought not to lose them by a slip in pleading; yet, such would be the consequence of the doctrine contended for, on the other side. But, fortunately, the law does not warrant the doctrine. The act of 1786 is express, that all matters of defence, of whatever description they be, may be given in evidence; and, consequently, non tenure: Which is agreeable to the doctrine of the common law; for, at common law, any thing but collateral warranty may be given in evidence. The tenants are obliged to plead the plea prescribed in the act; which is imperative, as has been rightly stated. This is proved by the case of Beverley v. Fogg; for, the judgment there was reversed, merely because the bounds were not inserted in the count, agreeable to the directions of the act.

Cur. adv. vult.

ROANE, Judge. This is a writ of right, for 1,120 acres of land on the South branch of Botowmack. The count and plea are both conformable to the act of 1786, [c. 59, 12 Stat. Larg. 345, c. 118, R. C. ed. 1819,] and both describe the tract, as comprehended within the same boundaries. At the trial of the cause, two exceptions were taken by the demandants: 1. To the admission of testimony going to shew the non-identity of the land possessed by the tenants, with relation to that described in the count and plea. 2. To the decision of the Court refusing to compel the tenants to join in a demurrer tendered by the demandants. In support of this last decision, two grounds were stated by the tenant’s counsel: 1. That the demurrant had also inserted, in his demurrer, his own testimony. 2. That the facts, to which the evidence related, contained matter proper for the consideration of the jury. The judgment of the County Court was reversed by the judgment of the District Court, “for that,” as they allodge, “ the Court below ought not to have admitted the evidence stated on the part of the tenants, as mentioned in the demurrant’s bill of exceptions, to have gone as evidence to the jury; and in not receiving the demurrer to evidence.”
The rectitude of this opinion of the District'Court, is now to be discussed; and I will first consider the case, on *495 the second bill of exceptions, relative to the demurrer to evidence.
As to the first objection stated by the tenants, to the reception of the demurrer, I shall only say, that in the case of Hyers v. Green, this Court were of opinion, on consideration of the case of Hoyle v. Young, 1 Wash. 150, and other authorities, that the plaintiff ought, especially in a writ of right, also to set out his own evidence; and, in that case, justified the rejection of the demurrer, on the ground, that the demurrant had not stated a title to recover, in respect of his own identity. This objection does not hold in the present case; for, the identity of the demandant is fully manifested. I am not certain, whether considered the ground of the Court, in Green v. Hyers, the second objection, although the demurrers, in the two cases, are, in that respect, substantially alike. But, I take the rule to be, that, although a Court- ought to award a joinder in demurrer, where the evidence demurred to is in writing; or, being parol, is explicit, and will not admit of variance, yet that, where the parol testimony is loose, indeterminate, and circumstantial, the party offering it, shall not be compelled to join in demurrer, unless the party demurring will distinctly admit every fact and conclusion, which such evidence or circumstances may conduce to prove. In support of this distinction, I beg leave to refer to 5 Bac. Abr. 746, [ Gwil. ed.] and the authorities there cited;* and to. say that the evidence in question, in . *496 this case, respecting the boundaries of the land, and the understanding of the country, relative to the description of the river, is entirely of this latter description, being loose and circumstantial. The demurrer to evidence, therefore, may be thrown out of the case.
The only remaining point to be considered, arises out of the first bill of exceptions; and is simply, whether, upon the mise being joined according to the form prescribed by the act of Assembly, evidence, going to shew a non tenure of the lands stated in the pleadings, be admissible ?
The act of 1786, concerning writs of right, prescribes the manner in which demandants shall count. It also prescribes a general mode in which the tenant may plead. I think it is not only inferrible, from the various use of the words shall and may, hut from the actual existence, at that time, of the act of 22 Geo. 2, ch. 1, [ Oct. 1748, §21, 5 Stat. Larg. 416,] (since re-enacted,) authorising a plea of non tenure in abatement, that the general plea, prescribed by the act of 1786, is concurrent, and not exclusive.
Nor will the inconveniences result, which the appellee’s counsel apprehended; and which he stated would arise, from the different judgments, prescribed by the common law, in the case of non tenure being pleaded, and the mise being joined. If non tenure be now pleaded, the Court will give such judgment thereupon as the common law requires: But, if it be given in evidence, and the jury find a special verdict, affirming such evidence, the Court will give a similar judgment. If, however, such evidence be given, and yet a general verdict be rendered upon the right, such verdict is a negative of that evidence; and decides the right: In which case, a judgment, corresponding with the verdict, ought to be rendered. ,
For these reasons, I think the judgment of the County Court was correct; and that the judgment of the District Court, reversing that judgment, ought to be reversed.
FLEMING, Judge. Thiá is an appeal from a judgment of the District Court, reversing a judgment of the County Court, rendered in favor of the appellants in this *497 Court.; and the reasons given by the District Court, are: 1. That the County Court permitted evidence to be given to the jury, that the tenants were not in possession of the lands demanded, when the mise had been joined, between the parties, upon the mere right. 2. That the County Court did not compel the tenants to join in the demurrer to the evidence, which was tendered by the demandant.
As to the first: The Legislature of this country, in order to simplify the pleadings, expedite the trials, and prevent unnecessary delays in writs of right, have taken away the views and other delatories, and obliged the tenant to plead the general issue, and put himself upon the assize; allowing him to give any matter in evidence at the trial of the cause, which might have been specially pleaded. This latter provision appears to have been made; in order to reserve to him the benefits to which he would have been entitled by the common law proceedings; and, therefore, he ought not to be deprived of them by arguments drawn from the common law, before the mode of proceeding was changed by the act of Assembly.
But, it is objected by the counsel for the appellants, that the act of Assembly does not oblige the tenant to put himself upon the assize; for, by using the word may, they leave it optional in him, to put in the plea prescribed by the act, or to plead any matter specially, according to the course of the common law. Such a construction, however, would render the act a dead letter; for, the tenant might, at common law, have joined the mise upon the mere right, and put himself upon the assize, without the aid of a statute, to enable him to do it. This shews that a change in the proceedings was contemplated; and that the word may was intended to be compulsory.* In other words, it was not intended, that it should be left to the tenant’s option, what he would plead; but, the meaning was, that he should be obliged to use the plea prescribed by the act However, in order to prevent his sustaining any prejudice thereby, he is allowed to give any matter in evidence which he might have specially pleaded. By this means, the proceedings are simplified, and delays prevented, without any injury to the party: Which was the great desideratum, and what the statute was designed to effect. Consequently, it would be thwarting the will of the Le *498 gislature, and defeating the end of the act of Assembly, if we were (-0 throw the party back again upon the technical rules of the common law; which the statute was made to correct
I am therefore clearly of opinion, that the County Court very properly permitted the evidence of non tenure to be .given to the jury; and consequently that the opinion of the District Court upon that point, was erroneous.
With respect to the second point relative to the demurrer to the evidence: After the County Court had permitted the evidence to go to the jury, the cause rested on a single point; namely, whether the land in possession of the tenants was the same, with that claimed by the demandant in his count? This was a mere fact, proper for the consideration of the jury upon the evidence; and therefore, I think the County Court very properly left it to their, decision.
The result is, that I am of opinion, the judgment of the District Court was erroneous upon both grounds; and therefore, thát it ought to be reversed, and the judgment of the County Court affirmed.
LYONS, Judge. The demurrer, after stating the titles and claims of all the parties, reduces the question to a single fact; that is to say, whether the land claimed by the demandant, and in possession of the tenants, is within the bounds of the patent granted to Robert Green, in the year 1746, for 1120 acres, in the county of Augusta? Or in other words, whether it is the same land which was surveyed for, and granted to Robert Green by that patent ? This was a simple question of fact; which a jury alone could, and ought to have determined. Therefore, I think, the County Court, very properly left it to their decision.
But 'it is objected, that the tenants, not having plead non tenure in abatement, were precluded from giving it in evidence, or in any manner questioning the identity of the land. Suppose that position were to be granted, could the demandant recover without shewing some title ? After offering in his count, proof of his right, has he produced it, or shewn any title to the land which he has surveyed in possession of the tenants ? That land lies on the South side of the South fork of the South branch; and not on the South side of the North fork, as his patent calls for, and states the land he claims to lie. Then is it just, or can it be law, that after an issue is joined on the mere right. *499 that the claimant shall recover land to which he shews no right, merely because the tenant cannot produce a patent for it! Surely, possession in such a case gives the best right; and the demandant ought not to be allowed to disturb it, without shewing a complete title in himself.
Suppose the tenants had produced a prior patent for lands lying in the county of Augusta, and insisted that the lands claimed were within the bounds of their patent, must not the jury have enquired into the bounds of both patents, and determined whether the lands were included in either? And, if not included in either, what must have been their verdict ? Could they have found for the demandant, who had no better title than the tenants ? Surely not, for he could have no claim to a verdict, without shewing a title. But if the tenants may controvert the boundaries, where different patents are produced, without pleading non tenure, I see no reason why they may not do it in every other case. The difficulty arises on account of the judgment to be entered in such cases, as it is a bar to the demandant to sue the tenant again. This might have been provided for by the Legislature, when they were altering the mode of proceeding; but having omitted to do so, the legal consequences must take place.
If, however, the tenant does not chuse to enter into the controversy, respecting the title or bounds, on the general issue, he may still plead non tenure in abatement, as the act does not forbid it. All the difference is, that a different judgment will be entered for the tenant in that case, if found for him, than would be entered on a joinder of the mise; and that the demandant may take issue on the non tenure, or discontinue his suit as he sees proper.
Upon the whole, I am of opinion, that the judgment of the District Court should be reversed; and that of the County Court affirmed.

[* And see Harrison v. Brock, 1 Munf. 22; Young et al. v. Black, 7 Cranch, 565; 568; Duerhagen v. The U. S. Ins. Com. 2 Serg. & Raw. 185; Norvell v. Camm et al. 2 Rand. 68; and Whittington et al. v. Christian et al. 2 Rand. 353, 357-8; in which, Green, J. said, (the other Judges concurring,) that, ** from the author!® ties shewing the original practice of the English Courts on this subject, it appears, that the former practice was, to require the party demurring, to admit, upon the record, the existence of all the facts, which the evidence offered by the other party conduced to prove. Those facts were to be ascertained by the Court; and, in this respect, the Court might err in opinion; and, if so, and the party refused to make the admission, he lost the benefit of his demurrer; or, if he made the admission on record, it bound him irrevocably. In the latter case, the error of the Court could never he corrected; and, in the former, not without a protracted litigation, attended with great delay and expense, to wits by bill of exceptions and appeal.
To avoid this inconvenience, the modem practice is, especially in Vir* ginia9 where it has been sanctioned by repeated decisions of this Court, to allow either party to demur, unless the case he clearly against the party-offering the demurrer, or the Court should doubt what facts should reasonably be inferred, from the evidence demurred to; in which case, the jury is the most fit tribunal to decide; to put all the evidence, on both sides, into the demurrer, and then to consider the demurrer, as if the demur-rant had admitted all that could reasonably be inferred by a jury, from the evidence given by the other party, and waiving all the evidence on his part, which contradicts that offer-
*496 ed by the other party 5 or the credit of which is impeached; and all inferences from his own evidence, which do not necessarily flow from it. With these limitations, the party whose evidence is demurred to, has all the benefit of the ancient practice which it was intended to give, without subjecting the other party to its inconveniences ; and no disputed fact is taken from the jury, and referred to the Court.”]

[* See Kent, Ch. in Newburgh Turnp. Co. v. Miller, 5 Johns, Ch. R. 113; and Green v. Liter et al. 8 Cranch, 244.]